UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John T. Masink, | Civil No. 11-576 (DSD/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue,<br>Commissioner of Social Security, | |
| Defendant. | |

_____

Neut L. Strandemo for Plaintiff.
David W. Fuller, Assistant United States Attorney, for Defendant.
_____

Plaintiff John Masink seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied his application for disability insurance benefits ("DIB"). The matter has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claim pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment. (Dkt. Nos. 9 and 12). For the reasons that follow, the Court recommends that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED**.

## I. INTRODUCTION

Mr. Masink protectively filed his application for DIB on January 26, 2004. (Dkt. No. 8, Administrative Record [hereinafter Tr.] 80–82.) Initially, Mr. Masink claimed his disability began July 31, 2001, but amended his disability onset date to September 1, 2005. (Tr. 117, 57.)

1

The Social Security Administration denied Mr. Masink's claim for DIB on July 29, 2004 and, upon reconsideration, denied his application again on September 30, 2004. (Tr. 32, 37.)

Mr. Masink filed a written request for a hearing, which was held on May 25, 2006 before Administrative Law Judge ("ALJ") Larry Meuwissen. (Tr. 39, 416–58.)  The ALJ determined that Mr. Masink's date last insured was December 31, 2005. (Tr. 16, 29.) Further, the ALJ concluded that Mr. Masink's work as a foster parent constituted substantial gainful activity ("SGA").  (Tr. 30.)  Because Mr. Masink had engaged in SGA from September 1, 2005 through his date last insured, the ALJ found that Mr. Masink was not disabled as defined by the Social Security Act.  (Tr. 31.)

Mr. Masink then appealed the unfavorable decision to the Appeals Council. (Tr. 53.) On September 5, 2008, the Appeals Council issued an order remanding the case back to the ALJ, finding that Mr. Masink's receipt of foster care payments was not considered income under the Internal Revenue Code and Minnesota Rules, Chapter 9560, and therefore, Mr. Masink was not self-employed. (Tr. 69–70.)

The second hearing before ALJ Larry Meuwissen was held on December 23, 2008. (Tr. 397–415.) The ALJ again concluded that Mr. Masink's foster care services constituted SGA. (Tr. 16–18.) Mr. Masink again appealed for review before the Appeals Council, which was denied on January 7, 2011. (Tr. 6.)  Mr. Masink commenced this civil action on March 7, 2011, and both parties filed cross-motions for summary judgment. (Dkt. Nos. 1, 9, and 12.)

## II.  STATEMENT OF FACTS

### A.  Background

John T. Masink was 54 years old on December 31, 2005, his date last insured (Tr. 16, 29.) Mr. Masink's past employment includes working as a general manager of the service

2

department at Duke's Mobile, Vice President of Operations at Iowa Oil, manager of Croix Oil Company's convenience stores, store manager and special projects manager at Ashland Oil, project developer/manager at Croix Oil Company, and owning his own restaurant. (Tr. 427–28, 403, 126–33.) After leaving his last place of employment, Duke's Mobile, in 2001, Mr. Masink collected unemployment benefits for one year and continued to search for employment. (Tr. 429.) Mr. Masink searched for work from 2001 through 2002, but eventually gave up as a result of a perforated cornea in his left eye. (Tr. 430, 225.) Mr. Masink has also suffered from macular degeneration and glaucoma in the right eye, diabetes, heart disease, loss of feeling in his hands and feet, and an eczematous skin infection. (Tr. 233, 290, 409-10.) Since 2001, Mr. Masink has not worked or received any income except for funds received as a result of his foster care services. (Tr. 422, 427–40.)[1] Mr. Masink has taken care of his foster children by himself. (Tr. 422.)

**B. Mr. Masink's Testimony**

At the first administrative hearing on May 25, 2006, Mr. Masink testified that he had been out of work since 2001, when he was last employed with Duke's Mobile. (Tr. 429–30.) After leaving Duke's Mobile, Mr. Masink collected unemployment benefits for one year and later stopped searching for work in 2002. (Tr. 430.) He testified that he gave up his search for employment because his eyesight "got considerably worse." *Id.*

At the time of the first hearing, Mr. Masink testified that he was taking care of five children, four foster children and one adopted child, and that he had been taking care of the children for the last five years. (Tr. 421–22.) He mentioned that the ages of the children ranged from 14 to 19 years of age. (Tr. 421.) At the time of the second administrative hearing on

---

[1] The record is not clear as to when Mr. Masink first began his foster care services. His statement to his doctor in February 2003 that he had "adopted 5 kids" in the spring of 2002 provides a rough approximation of when he first became a foster parent. (Tr. 196.)

December 23, 2008, Mr. Masink stated that he had two foster children, the youngest being 16, and that he had cared for two more in the past year. (Tr. 400, 410.) During the first hearing, Mr. Masink testified that he received $30–$50 per child per day, which would equal anywhere from $30,000–$40,000 per year. (Tr. 423.)  At the second hearing, Mr. Masink testified that he received $3,400 per month for the two foster children he was caring for at the time. (Tr. 401.) Mr. Masink stated that any money received as a result of his foster care services is not considered income by the IRS since it is for the support of the children. (Tr. 423–24.) He also clarified that he does not receive any foster care funds for taking care of his adopted child. (Tr. 424.) Mr. Masink mentioned that he does not have any other sources of income or any savings accounts, and that he uses the foster care funds to pay the mortgage on his house. (Tr. 440–41.) Further, Mr. Masink stated that he does not have to provide the county with an annual accounting of how he spent the foster care funds. (Tr. 441.)

     Mr. Masink stated that his chores consist of cooking dinner, supervising the children, doing "a lot" of laundry, and a "little cleaning," and that he spends "maybe two hours" per day on completing those chores. (Tr. 401, 433, 439, 407, 441.) Mr. Masink also stated that when his medical conditions were unbearable, the children cooked dinner for themselves, and that this might occur a "couple of times a month." (Tr. 439.) Mr. Masink testified that his children do most of the cleaning. (Tr. 410.) He stated that he is able to drive, but because of his poor eyesight and the sensitivity of his eyes to sunlight, the furthest he has driven is five miles, most of which consists of trips to the grocery store. (Tr. 425, 437.) In the event that his eyes are overly sensitive, Mr. Masink will have one of his children with a driver's license go shopping on his behalf. (Tr. 438.)

Additionally, Mr. Masink stated that his foster children have problems, including "everything from schizophrenia [to] bipolar to fetal alcohol." (Tr. 438.) He mentioned that the reason why he has these children is, in fact, because they have such problems. *Id.* He stated that he does not treat them, but rather a psychotherapist comes out to his house twice a week to treat all of the children. (Tr. 442.) "[He] is just their parent." (Tr. 438.)

Finally, Mr. Masink testified that he routinely appears before judges who make sure that the children are taken care of and have essential necessities such as food and clothes. (Tr. 442). He also mentioned that social workers routinely visit him once a month or more to check on the status of the children. *Id.* He testified that he meets with school personnel once every six months and is required to fill out monthly reports for county social workers with respect to the children. (Tr. 408.)

### C. Vocational Experts' Testimony

John Brzezinski testified as the Vocational Expert ("VE") at the first hearing. (Tr. 444.) When the ALJ asked whether there were jobs in competitive employment similar to a foster care-type position, Mr. Brzezinski provided that there were front-line worker positions in group homes that would pay $8.00–$12.00 per hour, and management positions that would pay $30,000 per year in a smaller group home and $40,000–$60,000 per year in a bigger facility. (Tr. 444–45.) Kenneth Ogren, the VE who testified at the second hearing, testified that Mr. Masink's role as a foster parent could be classified as a "house parent" or a "companion." (Tr. 413.)

### D. Evidence from Dakota County Human Services

On January 30, 2009 and February 3, 2009, the ALJ contacted Dakota County Human Services Foster Care Payment Specialists Nancy Udall and Barbara Karlig. (Tr. 107.) The ALJ's report of their communication provides that the daily foster care rate is $23 per child without

special needs. *Id.* With two children in his care, Mr. Masink received $713 per child per month in regular foster care payments. In addition, the report states that Mr. Masink was "licensed by a private agency and is contracted by local counties to provide foster care for special needs children, particularly behaviorally challenged adolescents." *Id.* As a result, Mr. Masink received approximately $887 extra per child on a monthly basis as "difficulty of care payments" due to the special needs of the children. *Id.* In total, Mr. Masink received $3,200 per month of combined regular foster care payments and difficulty of care payments for the two children. *Id.*

### E. The ALJ's First Decision

The ALJ followed the five-step sequential process outlined in 20 C.F.R. § 404.1520 to determine if Mr. Masink was disabled. At step one, the ALJ analyzed whether Mr. Masink had engaged in SGA since the onset of his disability. The ALJ considered the three step test set out in 20 C.F.R. § 404.1575, which provides an analytical framework for determining whether a self-employed individual is engaged in SGA. (Tr. 29.)

Under Test One,[2] the ALJ concluded that Mr. Masink's foster care services are significant to the operation of the business. 20 C.F.R. § 404.1575(a)(2)(i) (Test One) (Tr. 30.) The ALJ, however, did not find SGA under Test One because he could not conclude whether Mr. Masink's receipt of foster care payments was considered "substantial income" since Mr. Masink had not filed tax returns or completed a calculation of his net earnings from self-employment. *Id.*

Under Test Two,[3] the ALJ concluded that Mr. Masink's work activity as a foster parent was comparable to that of an unimpaired individual. 20 C.F.R. § 404.1575(a)(2)(ii) (Test Two)

---

[2] 20 C.F.R. § 404.1575(a)(2)(i) (2006) (Test One) ("You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business.").
[3] 20 C.F.R. § 404.1575(a)(2)(ii) (2006) (Test Two) ("You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.").

(Tr. 30.) The ALJ found that Mr. Masink's providing of a full range of activities required for foster care was comparable to that of an unimpaired individual in terms of "hours, skills, energy output, efficiency, duties, and responsibilities," and therefore, Mr. Masink was engaged in SGA. (Tr. 30.)

Additionally, under Test Three,[4] the ALJ buttressed his finding of Mr. Masink's engagement in SGA by concluding that Mr. Masink's foster care services "were worth a substantial gainful amount when considered in terms of value to the business, <u>or</u> when compared to the salary an employee would be paid." 20 C.F.R. § 404.1575(a)(2)(iii) (Test Three) (Tr. 30.) (emphasis in original.) The ALJ categorized Mr. Masink's foster care services as a sole proprietorship, and found that his services were essential to the operation of the business. *Id.* Further, the ALJ determined that the value of Mr. Masink's hours and work activity, when compared to the salary an average day care provider would earn, exceeded the income limits of SGA. *Id.* Because Mr. Masink was engaged in SGA, he could not be considered disabled as defined under the Social Security Act.

### F. The Appeals Council's Decision

The Appeals Council granted Mr. Masink's request for review under 20 C.F.R. § 404.970, vacated the ALJ's decision and remanded the case for further proceedings. (Tr. 69.) The Appeals Council first relied on Acquiescence Ruling 86-16 (2), which provides that "the Social Security Administration considers payments to a foster parent on behalf of a foster child to be payments for the child's support. . . ." *Id.* Moreover, the Appeals Council placed significant weight on the characterization of foster care payments under Minnesota Rules, Chapter 9560 and

---

[4] 20 C.F.R. § 404.1575(a)(2)(iii) (2006) (Test Three) ("You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.").

IRS Publication 17 as payments made for the child's support which are generally not included as income for income tax purposes. *Id.* The Appeals Council stated that it did not appear Mr. Masink was receiving "difficulty of care payments," which are treated differently than "regular" foster care payments. (Tr. 69–70.)

The Appeals Council then pointed out that it does not appear that Mr. Masink was engaged in a business in accordance with 20 C.F.R. § 404.1065. (Tr. 70.) Accordingly, the Appeals Council determined "that the current record does not establish that [Mr. Masink's] receipt of foster care payment represented self-employment work activity. Thus, additional proceedings are necessary." *Id.*

### G. The ALJ's Second Decision

On remand, the ALJ again concluded that Mr. Masink had engaged in SGA since the onset of his disability based on the three tests outlined in 20 C.F.R. § 404.1575. (Tr. 16–18.) The ALJ concluded under Test Two that Mr. Masink's foster care services were comparable to that of an unimpaired individual in the community in the same or similar business. (Tr. 16.) The ALJ found that Mr. Masink was holding himself out "as having the ability to provide (and, in accepting government payments, necessarily assures that he is providing) services that represent substantial gainful activity in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities." *Id.* The ALJ goes on to state, "The sequential evaluation process is designed to prevent what this claimant attempts: ***to have it both ways***. He cannot assure the county that he does, in fact, provide the expected services; and deny here that he does so." (Tr. 17.) (emphasis in original.) The ALJ found under Test Two that Mr. Masink's work activity was comparable to that of unimpaired individuals who are in the same or similar business, specifically the businesses of home health care aide, day care, and companion. (Tr. 16-17.)

The ALJ also rejected the Appeals Council's determination that Mr. Masink did not receive "difficulty of care" payments. The ALJ pointed to evidence from Dakota County Social Services that Mr. Masink received an extra $1,774 per month above the regular foster care payment as a difficulty of care payment. (Tr. 16-17.) The ALJ noted that this amount alone exceeded the SGA threshold through Mr. Masink's date last insured. (Tr. 16.) The ALJ found that even though these payments are not taxable as income, they indicate the value of Mr. Masink's services. The ALJ determined under Test Three that the difficulty of care payments indicated that the value of Mr. Masink's services had exceeded the value of SGA. (Tr. 17.)

The ALJ also distinguished Acquiescence Ruling 86-16 (2), cited by the Appeals Council, from Mr. Masink's circumstances, noting that Acquiescence Ruling 86-16 (2) concerned Vermont law and Title II child benefits, neither of which are at issue here. (Tr. 17.) The ALJ concluded that Mr. Masink's receipt of difficulty of care payments above the SGA level, his work activity when compared to unimpaired individuals, and the value of his services when compared to similar occupations established that Mr. Masink was engaged in SGA through his date last insured. (Tr. 18.) The ALJ once again determined that Mr. Masink was not disabled at step one of the five-step sequential evaluation. The Appeals Council subsequently denied Mr. Masink's request for review, upholding the ALJ's second decision as the final decision of the Commissioner. (Tr. 6.)

### III.  STANDARD OF REVIEW

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir.1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir.1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir.

1989). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co., v. NLRB*, 305 U.S. 197, 220 (1938)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir.1989) (citing *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently. *Roberts v. Apfel*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Oberst v. Shalala*, 2 F.3d 249 (8th Cir. 1993) (citing *Robinson v. Sullivan*, 956 F.2d 836, 838) (8th Cir. 1992)). Therefore, our review of the ALJ's factual determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). The Court must "defer heavily to the findings and conclusions of the [Social Security Administration]." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

Disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (2003). In making the disability determination the Secretary promulgated a sequential evaluation process which applies to both physical and mental disorders. 20 C.F.R. § 404.1520 outlines the five-step sequential process used by the ALJ to determine whether a claimant is disabled. The disability determination requires a step-by-step analysis. *See* 20 C.F.R. § 404.1520(a) (2012). Of most importance for this case is the first step, under which the ALJ must determine if the claimant has engaged in SGA since the onset of the claimant's disability.

## IV. CONCLUSIONS OF LAW

Mr. Masink argues that the ALJ erred in concluding that his provision of foster care services amounted to SGA, preventing him from being found disabled under 20 C.F.R. § 404.1505. This Court disagrees with Mr. Masink for the following reasons.

The Court concludes under Test Two that the record was inadequately developed to allow a determination that Mr. Masink's performance of foster care services was comparable to that of an unimpaired individual in a similar business. *See* 20 C.F.R. § 404.1575(a)(2)(ii) (2006) (Test Two). Under Test Three, however, the Court finds that Mr. Masink was engaged in SGA since his work activity was clearly worth the amount shown in the Earnings Guidelines when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the same work.[5] *See* 20 C.F.R. § 404.1575(a)(2)(iii) (2006)

---

[5] Mr. Masink does not contest the ALJ's conclusion with respect to Test One under 20 C.F.R. § 404.1575(a)(2)(i). Under Test One, the ALJ was unable to determine whether Mr. Masink received substantial income from his business because Mr. Masink "has not filed tax returns and has not completed a calculation of his net earnings from self employment." (Tr. 30.)

(Test Three). Therefore, Mr. Masink's SGA precludes him from being considered disabled under 20 C.F.R. § 404.1505(a), disqualifying him from eligibility for DIB.

**A. Test Two – There is not substantial evidence on the record as a whole that Mr. Masink's performance of foster care services was comparable to that of an unimpaired individual in a similar business.**

Test Two provides: "[An individual has] engaged in [SGA] if [that individual's] work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in [that individual's] community who are in the same or similar business as their means of livelihood." 20 C.F.R. § 404.1575(a)(2)(ii) (2006). Significantly, Social Security Ruling 83-34 provides:

> Each [abovementioned] work factor . . . must be described in detail, showing its contribution to the business operation. General descriptions are considered inconclusive evidence for the point-by-point comparison that is required. If only a general description is possible or available, any doubt as to the comparability of the factors should be resolved in favor of the impaired individual. Evidence of the impaired individual's activities accompanied by a statement that the work is comparable to the work of unimpaired persons is insufficient for a sound decision.

SSR 83-34, PPS-108, 1983 WL 31256 (Jan. 1, 1983). "Where there is any doubt as to the comparability . . . of services, it will be necessary to obtain evidence in appropriate detail, supplemented as required by opinions from authoritative sources in the community." *Id.* "The lack of conclusive evidence as to the comparability of the required factors will result in a finding that the work performed is not SGA." *Id.*

The ALJ concluded in both decisions that Mr. Masink's provision of foster care services was comparable work activity to that of an unimpaired individual in the same or similar business. The ALJ noted that during the relevant period, Mr. Masink provided foster care for four children, and that he was licensed by a private agency and contracted by local counties to provide foster care for behaviorally challenged adolescents. (Tr. 16.) The ALJ emphasized that Mr. Masink, by

12

accepting foster care payments, assured local counties that he was providing care for special needs children, which involved "services that represent substantial gainful activity in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities." *Id.* The ALJ failed, however, to make detailed comparisons of Mr. Masink's performance of foster care services to that of unimpaired individuals in Mr. Masink's community in the same or similar business.

Further, the VE testimony in both hearings does not provide substantial evidence to support the ALJ's conclusions on the comparability of Mr. Masink's work activity. In the first hearing, Mr. Brzezinski testified that there were front-line worker or management positions available in group homes that would be similar to foster care positions. (Tr. 444–45.) Significantly, Mr. Brzezinski's testimony did not elaborate on the work activities of the forgoing positions, and no such evidence is available in the record. In addition, Mr. Brzezinski did not specifically compare Mr. Masink's work activity in terms of hours, skills, energy output, efficiency, duties, and responsibilities to that of unimpaired individuals in the same or similar business. For similar reasons, the testimony of Mr. Ogren in the second hearing that a homecare position could be classified as a caretaker or companion position is an insufficient comparison for purposes of Test Two. (Tr. 413.) Without specific evidence of how the work of a front-line worker in a group home, a caretaker, or a companion in Mr. Masink's community is comparable in terms of the abovementioned factors to Mr. Masink's specific work activity, the record was not sufficiently developed under Test Two.

The ALJ's reasoning that Mr. Masink has held himself out to Dakota County Social Services as providing services that represent SGA in terms of hours, skills, energy output, efficiency, duties, and responsibilities, and that Mr. Masink is "trying to have it both ways" is

insufficient support for his decision under Test Two. While this may provide some evidence that Mr. Masink's work activity was more than the minimal level he described at the hearing, it does not provide evidence of how Mr. Masink's services compared to those of an unimpaired individual in a similar business. The record was inadequately developed in accordance with Social Security Ruling 83-34, and because any doubt must be resolved in favor of the claimant, the Court finds that Mr. Masink was not engaged in SGA under Test Two.

**B.  Test Three – Mr. Masink's work activity is clearly worth the amount shown in the earnings guidelines when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the same work.**

The Third Test for determining whether Mr. Masink was engaged in SGA as a foster parent is under 20 C.F.R. § 404.1575(a)(2)(iii). Test Three provides:

> [An individual] has engaged in [SGA] if [his or her] work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in [the Earnings Guidelines in] § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work [the individual is] doing.

20 C.F.R. § 404.1575(a)(2)(iii) (2006). In 2005, the threshold level for SGA was an average monthly income of $830. 20 C.F.R. § 404.1574(b)(2); *see also* Office of the Chief Actuary*, Substantial Gainful Activity*, SOCIAL SECURITY ONLINE, http://www.ssa.gov/oact/COLA/sga.html (last visited Mar. 23, 2012). The degree to which evidence of worth of services should contain data supplied by outside authorities will depend on the facts of the case. *See* SSR 83-34, PPS-108, 1983 WL 31256 (Jan. 1, 1983). It may not be necessary to document the file in great detail due to familiarity with local conditions. *See id.* Nevertheless, "where there is any doubt as to the . . . worth of services, it will be necessary to obtain evidence in appropriate detail, supplemented as required by opinions from authoritative sources." *Id.*

The Court finds that the evidence of potential earnings for similar employment and the evidence that Mr. Masink received "difficulty of care" payments constitute substantial evidence on the record as a whole to support the ALJ's determination that Mr. Masink was engaged in SGA under Test Three.[6] Mr. Masink is licensed with a private agency to provide care for special needs children. Mr. Masink's license is essential to his ability to take in special needs children and to his receipt of "difficulty of care" payments. A difficulty of care payment is defined as a "supplemental maintenance payment . . . based on an assessment of the child's special needs due to existing physical, mental, or emotional handicaps." Minn. R. 9560.0521, Subp. 7. Mr. Masink receives "difficulty of care" payments over and above general "foster care maintenance payments," which cover the cost of the children's food, clothing, shelter, daily supervision, school supplies and personal incidentals. *Id.*, Subp. 10. Dakota County Foster Care Payment Specialists stated that Mr. Masink received "difficulty of care" payments totaling $3,200 per month for two special needs children.

Although Mr. Masink testified that his performance of foster care services was limited by his disabilities to two hours per day, he still cleaned, did laundry, supervised, and completed other administrative tasks such as filling out reports for social services and setting up meetings with the children's counselors and psychotherapists. Even though Mr. Masink sometimes received help from his children, he still performed the requisite services necessary to maintain a home environment, allowing him to receive "difficulty of care" payments that he depended on as his only form of income.

---

[6] Although it is not clear whether the ALJ determined (a) that the value of Mr. Masink's services to the business was considered SGA, or (b) that his work activity was considered SGA in terms of the salary an owner would pay, the Court finds SGA under both circumstances.

15

Moreover, the VE in the first hearing, Mr. Brzezinski, testified that a front-line worker in a group home, a position similar to Mr. Masink's work activity, could earn $8.00 to $12.00 per hour (that is, roughly $1,280 to $1,920 per month), or $30,000 to $60,000 per year as a manager. This is less than Mr. Masink made every month in difficulty of care payments alone. Looking to the amount received by Mr. Masink in difficulty of care payments and to the potential earnings in similar employment as demonstrative of the value of Mr. Masink's services, it is clear the value of Mr. Masink's foster care services would exceed the Earnings Guidelines provided in 20 C.F.R. § 404.1574(b)(2) ($830 per month). Therefore, Mr. Masink was engaged in SGA under Test Three through his date last insured, and thus is ineligible for DIB.

Plaintiff argues that "difficulty of care" payments are not considered income. Plaintiff relies on the definition of "difficulty of care payments" in Minnesota Rule 9560.0521, Subpart 7, which provides, "[a] difficulty of care payment does not include payment for services rendered by a licensed foster parent." Minn. R. 9560.0521, subp.7. The Court agrees with the ALJ's determination that it is irrelevant for purposes of Test Three whether those payments would be characterized as taxable income.[7] Rather, the Court finds that the receipt of "difficulty of care" payments is indicative of the level of services provided by Mr. Masink. Test Three focuses on the value of Mr. Masink's services to the business—not on his receipt of income. The testimony of the Dakota County Foster Care Payment Specialists, Mr. Brzezinski, and Mr. Masink himself with respect to his provision of foster care services together constitute substantial evidence sufficient to affirm the ALJ's conclusion that Mr. Masink was not disabled, as defined under the Social Security Act.

---

[7] The ALJ stated: "It is the services, not the 'income' that compel a finding of SGA." (Tr. 17.)

16

The Court is aware of the public policy concerns involved with categorizing the provision of foster care services as self-employment. The Court is not, by this decision, holding that the provision foster care services always constitutes self-employment. Such a determination is made on a case-by-case basis. *See* 1 HARVEY L. MCCORMICK SOCIAL SECURITY CLAIMS AND PROCEDURES § 3:105 (6th ed. 2009) (requiring a facts and circumstances analysis). Under these facts and circumstances, however, Mr. Masink is self-employed as a foster parent and engaged in SGA in terms of the value of his services, or when compared to the salary paid for similar employment.

The Court finds that Mr. Masink was engaged in SGA under the first step of the five-step sequential evaluation, and is therefore not disabled within the meaning of the Social Security Act. Because the determination of non-disability was made at step one, the Court need not evaluate Mr. Masink's disability under the other four steps.

## V.  RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment [Dkt. No. 9] be **DENIED.**

2. Defendant's Motion for Summary Judgment [Dkt. No. 12] be **GRANTED.**

3. The Commissioner's decision be **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  June 1, 2012                                          _s/ Franklin L. Noel_
                                                              FRANKLIN L. NOEL
                                                              United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before June 19, 2012, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within 14 days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.